<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| PAMELA STOKES<br><br>　　　　　　　　　Plaintiff,<br><br>v.<br><br>TRANSWORLD SYSTEMS, INC.<br><br>　　　　　　　　　Defendants. | Civ. No.  (DRD) 12-6805<br><br>**O P I N I O N** |

*Appearances by:*

Joseph K. Jones, Esq.
Law Offices of Joseph K. Jones, L.L.C.
375 Passaic Avenue, Suite 100
Fairfield, NJ 07004

　　*Attorney for Plaintiff,*

Aaron R. Easley, Esq.
SESSIONS, FISHMAN, NATHAN & ISRAEL, L.L.C.
200 Route 31 North, Suite 203
Flemington, NJ 08822

　　*Attorney for Defendant.*

**<u>DEBEVOISE, Senior District Judge</u>**

　　Plaintiff Pamela Stokes is an individual consumer bringing a class action suit against Defendant Transworld Systems, Inc. ("TSI") for alleged violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 USC 1692, *et seq.* pursuant to form collection letters sent to her and, upon information and belief, to the class at-large.  The present matter is a partial motion for

judgment on the pleadings of claims founded upon violation of sections 1692e(2)(a), 1692e(1), and 1692g of the FDCPA.

## I.   BACKGROUND

Ms. Stokes alleges that three collection letters sent to her by TSI are in violation of the requirements of the FDCPA.  The contents of three collection letters, being at issue here, are outlined in relevant part immediately below.  Briefly, Ms. Stokes contests that TSI's reference to the "30-day FDCPA dispute period" in the second collection letter and then reference to "a legitimate debt" in the third collection letter is misleading and deceptive, and as such cause the least sophisticated consumer to be confused about the validity of the alleged debt and how to effectively dispute it.  (See Opp. Br. at 6-7.)

The first collection letter sent by TSI to Ms. Stokes is dated April 30, 2012, for an amount due in the sum of $1,032.37.  The letter provides:

> Unless you, *within 30 days after receipt of this notice*, notify this office that you dispute the validity of this debt, or any portion thereof, TSI will assume this debt is valid.  If you notify this office in writing *within the 30-day period that this debt*, or any portion thereof, is disputed, TSI will obtain verification of this debt or a copy of a judgment and mail you a copy of such judgment or verification.  If you request this office in writing *within the 30-day period*, TSI will provide you with the name and address of the original creditor, if different from the current creditor.

(Compl., Ex. A) (emphasis added.)

The second collection letter sent by TSI to Ms. Stokes is dated May 29, 2012, just one-day shy of the validation period, and provides:

> Upon expiration of *the 30-day FDCPA dispute period* we will assume your debt to be valid as provided by Federal law unless we receive a dispute from you.

> It has been our experience that much of the debt assigned for professional collection is resolved before it reaches this stage in the collection process. This matter, however, has not yet been resolved.
>
> This matter should be addressed. If left unresolved, our collection efforts may continue. If our client wishes for us to do so, we will have this claim referred to our team of professional telephone collectors.
>
> (Compl., Ex. B) (emphasis added.)

The third correspondence was sent by Ms. Stokes' attorney to TSI, dated June 6, 2012, and was sent via facsimile, certified mail, and first class mail. It provides:

> Pursuant to 15 U.S.C. 1692c(c), you are hereby instructed to immediately *Cease and Desist* all collection efforts and communications with Ms. Stokes.
>
> As provided for under 15 U.S.C. 1692g(b), my client disputes the validity of the alleged debt and demands a verification, a full accounting, and the name and address of the original creditor. Kindly forward all such information to our <u>New Jersey</u> office. Additionally, pursuant to 15 U.S.C. 1692e(8), if Transworld Systems Inc., is reporting credit information concerning this alleged debt, then it is obligated to report it as disputed.
>
> (Compl., Ex. C.)

The third collection letter, and the fourth exchange between the parties, was sent by TSI to Ms. Stokes, and not her attorney, the following day on June 7, 2012. It provides:

> You have been advised of some of the problems and possible consequences connected with non-payment of a *legitimate debt*.
>
> Unless timely payment is made, we may recommend to our client that this account be transferred to our team of professional telephone collectors.
>
> (Compl., Ex. D) (emphasis added.)

## II.  DISCUSSION

### A.  Standard of Review

Rule 12(c) of the Federal Rules of Civil Procedure provides in relevant part that "[a]fter the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c).  The standard applied is similar to that applied to a Fed. R. Civ. P. 12(b)(6) motion to dismiss.  See Haynes v. Metropolitan Life Ins. Co., 94 Fed. Appx. 956, 958 (3d Cir. Apr. 20, 2004) (citing Turbe v. Gov't of the Virgin Islands, 938 F.2d 427, 428 (3d Cir. 1991)).  To survive a motion to dismiss, a complaint must contain factual allegations sufficient "to raise a right to relief above the speculative level." Bell Atlantic v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).  Thus, a complaint will survive a motion to dismiss if it contains sufficient factual matter to state a claim for relief that is plausible on its face.  See Phillips v. County of Allegheny, 515 F.3d 224, 228 (3d Cir. 2008).  Similarly, "[i]n reviewing the grant of a Rule 12(c) motion, [the court] must view the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party." Bayer Chemicals Corp. v. Albermarle Corp., 171 Fed. Appx. 392, 397 (3d Cir. Mar. 21, 2006) (internal quotation marks and citation omitted).  As with a Rule 12(b)(6) motion, in deciding a Rule 12(c) motion, the court typically does not consider matters outside the pleadings. Mele v. Federal Reserve Bank of New York, 359 F.3d 251, 257 (3d Cir. 2004).  The court may consider matters of public record, orders, and exhibits attached to the complaint.  See Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994).

### B.  Analysis

Congress made its purpose in enacting the FDCPA explicit: "to eliminate abusive debt collection practices by debt collectors, to insure [sic] that those debt collectors who refrain from

using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). As a remedial statute, courts should "construe . . . [it] broadly, so as to effect its purpose." Rosenau v. Unifund Corp., 539 F.3d 218, 221 (3d Cir. 2008) (citing Brown v. Card Serv. Ctr., 464 F.3d 450, 453 (3d Cir. 2006)).

In order to give effect to the Act's intent to "protect [] the gullible as well as the shrewd," Brown v. Card Serv. Ctr., 464 F.3d 450, 453 (3d Cir. 2006) (quoting Clomon v. Jackson, 988 F.2d 1314, 1318 (2d Cir. 1993)), courts have analyzed the statutory requirements "from the perspective of the least sophisticated debtor." Rosenau v. Unifund Corp., 539 F.3d 218, 221 (3d Cir. 2008) (quoting Brown, 464 F.3d at 454).  This standard is less demanding than one that inquires whether a particular debt collection communication would mislead or deceive a reasonable debtor.  Brown, 464 F.3d at 455.

"Nevertheless, the least sophisticated standard safeguards bill collectors from liability for 'bizarre or idiosyncratic interpretations of collection notices' by preserving at least a modicum of reasonableness, as well as 'presuming a basic level of understanding and willingness to read with care [on the part of the recipient].'"  Campuzano-Burgos et al. v. Midland Credit Management, Inc., 550 F.3d 294, 299 (3d Cir. 2008) (quoting Rosenau, 539 F.3d at 221, and referencing Wilson v. Quadramed Corp., 225 F.3d 350, 354-55 (3d Cir. 2000)).  "Although established to ease the lot of the naïve, the standard does not go so far as to provide solace to the willfully blind or non-observant.  Even the least sophisticated debtor is bound to read collection notices in their entirety. . . . Rulings that ignore these rational characteristics of even the least sophisticated debtor and instead rely on unrealistic and fanciful interpretations of collection communications that would not occur to even a reasonable or sophisticated debtor frustrate Congress's intent to

'insure that those debt collectors who refrain from using abusive debt collection practices are not completely disadvantaged.' *15 U.S.C. § 1692(e).*" Campuzano-Burgos, 550 F.3d at 299 (internal references omitted).

Ms. Stokes alleges that TSI violated Section 1692(g) because the validation notices caused confusion as to the method required to effectively dispute the alleged debt. Section 1692g (a) provides that the notice of debt shall include:

> (3) a statement that unless the consumer, *within thirty days* after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;
> (4) a statement that if the consumer notifies the debt collector in writing *within the thirty-day period* that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and
> (5) a statement that, upon the consumer's written request *within the thirty-day period*, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

15 USCS § 1692g (emphasis added). Specifically, Ms. Stokes takes issue with the discrepancy between the TSI's initial collection letter which communicates that Ms. Stokes has thirty days to dispute the validity of the debt, and the second collection letter – sent just one day shy of the thirty-day window – which references for the first time "the 30-day FDCPA dispute period." (Opp Br. at 5-6.) Ms. Stokes contends that TSI first introduced the term "FDCPA" in the second letter and failed to explain what the acronym stands for, and whether the "30-day FDCPA dispute period" relates to the thirty-day period referenced in the first letter. Ms. Stokes argues that a least sophisticated debtor would be left to wonder whether the "30-day FDCPA dispute

6

period" provided a second thirty day term for disputing the validity of the debt, and if so when did it start and when will it end. (Id. at 10.)

Second, Ms. Stokes alleges that TSI violated Section 1692e(2)(A) by falsely representing the character and legal status of the subject debt. Section 1692e prohibits debt collectors from the use of "any false, deceptive, or misleading representation in connection with the collection of any debt[.]" Specifically, Ms. Stokes has issue with TSI's portrayal of the debt in the third letter as "legitimate debt." Ms. Stokes argues that TSI used this new term without explanation of its meaning, how such a determination was made, and whether "legitimate debt" was the same as a "valid" debt, the term of art used in the first and second collection letters. (Id. at 5-6.) Ms. Stokes argues that the least sophisticated debtor would be left to contemplate whether a "legitimate debt" was the same thing as a valid debt, and whether he still has time to dispute the validity of the debt. (Id.)

Third, Ms. Stokes alleges that TSI used false representations and deceptive means to collect a debt in violation of Section 1692e(10). Specifically, Ms. Stokes contends that the collection letters are deceptive and misleading in that they added terms and phrases, as set forth above, without explanation as to their meanings and impact on the collection process and/or a debtor's rights to dispute the alleged debt. (Id. at 5-6.)

A communication is deceptive for purposes of the Act if "it can be reasonably read to have two or more different meanings, one of which is inaccurate." Rosenau v. Unifund Corp., 539 F.3d at 222 (3d Cir. 2008) (quoting Brown, 464 F.3d at 455). Similarly, a validation notice is overshadowing or contradictory, as a matter of law, if it would make the least sophisticated consumer uncertain or confused as to her rights to dispute or seek validation of the debt. Wilson, 224 F.3d at 353-54 & n.2. "Ultimately, the critical question [in determining whether a

7

communication violates the FDCPA] is . . . whether the notice fails to convey the required information clearly and effectively and thereby makes the least sophisticated consumer uncertain as to the meaning of the message." Weiss v. Zwicker, 664 F. Supp. 2d 214, 216 (E.D.N.Y. 2009) (quoting Greco v. Trauner, Cohen & Thomas, L.L.P., 412 F.3d 360, 363 (2d Cir. 2005)).

"[I]n general, not every follow-up letter demanding payment during the validation period overshadows or contradicts a validation notice; thus, not every follow-up letter sent during the validation period must automatically reiterate the safe-harbor validation notice, refer back to that notice, or remind debtors about the validation period and the time remaining in that period. Therefore, the mere absence of any such reiterations and reminders in the follow-up collection letters does not alone generate an unacceptable level of confusion. . . . Rather, the matter turns on whether the specific text contains an impermissible overshadowing or contradiction with respect to the validation notice." Durkin v. Equifax Check Services, Inc., 406 F.3d 410, 417 (7th Cir. 2005).

In their briefs and in oral arguments, the parties support their respective positions based on the reasoning employed by the Eastern District of New York in Weber v. Computer Credit, Inc., 259 F.R.D. 33, 37 (E.D.N.Y. 2009). Therein, Senior District Judge Jack B. Weinstein found that a follow-up letter sent during the thirty-day validation period did not violate the FDCPA. The court examined the second letter sent fourteen-days after the first, in which the collection agency did not remind the debtor of the thirty-day period, her rights to dispute the debt, or that the debt would be assumed valid if undisputed within the time frame. Additionally, the second letter explicitly "*strongly advise[d]*" the debtor to make the payment and "*expect[ed] [the debtor's] cooperation*." Id. at *36 (emphasis in original). The court first considered the rationale employed by the Seventh Circuit Court of Appeals in Durkin, *supra*, that the mere

8

absence of reiterations and reminders does not alone lead to unacceptable confusion.  Next, the court reasoned that "[t]he law must assume that the least sophisticated consumer – even when under financial or other stresses – is not so irresponsible as to throw away a serious letter affecting his or her finances, such as [a] first communication, instead of saving it for future reference or attention."  Id. at *22.  Last, Judge Weinstein noted that "the second letter does not demand immediate payment or threaten adverse consequences, and is not overshadowing." Id. at *23. The court thus held that the debtor's rights were not obscured by the second letter.

TSI argues that the reasoning employed in Weber is dispositive here.  Namely, the first letter advised Ms. Stokes of her right to dispute the subject debt.  Within the thirty-day dispute window, TSI sent a follow-up letter which did not need to reiterate the validation language, refer to it, or remind Ms. Stokes of the validation period and the time remaining.  TSI maintains that the follow-up letter did not confuse or contradict Ms. Stokes's rights.

In turn, Ms. Stokes argues that Weber is distinguishable because unlike the second letter in Weber, the second letter at issue here discusses the dispute period and obfuscates the notion of a "legitimate debt."  Ms. Stokes summarizes that Weber's holding is not controlling because here, the communications confuse so as to cloud the initial collection letter with uncertainty.

To be sure, the second collection notice sent to Ms. Stokes could have been clearer and more informative.  For example, it could have specified that the thirty-day dispute period was nearly complete and set to expire the following day.  However, the bar is impermissible confusion and overshadowing, not a ceiling of crystal clear instruction and reiteration.  The Third Circuit Court of Appeals instructs that "the standard does not go so far as to provide solace to the willfully blind or non-observant.  Even the least sophisticated debtor is bound to read collection notices in their entirety." Campuzano-Burgos, *supra*, 550 F.3d at 299.  A "modicum of

reasonableness" applies such that bill collectors are safeguarded from "bizarre or idiosyncratic interpretations of collection notices."  Id.

While a follow-up letter within the thirty-day period is permissible so long as it does not cast confusion, contradict, or overshadow the statutory right to dispute the subject debt, the second letter need not reiterate the rights set forth in the first validation notice.  Thus, inherently, the letters are to be read in tandem.  Here, Ms. Stokes raises issue with the reference to "the 30-day FDCPA dispute period" in the second letter, and argues that the letter refers to new terminology for the first time without definition and raises confusion as to the time period involved, particularly because it does not reference the thirty-day period addressed in the first letter and was sent the day before the thirty-day period was set to expire.

A closer examination indicates that the first letter uses the phrase "30-day period" twice in addition to introducing the concept ("… within 30 days after receipt of this notice . . ."). Additionally, the first letter makes clear that Ms. Stokes has thirty days to "dispute" the debt or "TSI will assume this debt is valid."  Similarly, the second letter warns that "[u]pon expiration of the 30-day FDCPA dispute period [TSI] will assume your debt to be valid as provided by Federal law unless [TSI] receive[s] a dispute from [Ms. Stokes.]"  Thus, while the phrase "the 30-day FDCPA dispute period" and the sending of the letter on the eve of the expiration of the period may raise an eyebrow, when read with the first letter, even the least sophisticated consumer would read these letters as being internally consistent.  The notion of a thirty-day period is used consistently in both letters, as is the notion of an assumption of debt validity if no dispute is received.  The Court's interpretation of the letters to the contrary would turn on idiosyncrasy contrary to the purpose of the statute.

Next, Ms. Stokes takes issue with the third collection letter's reference to the "legitimate debt" rather than a "valid debt" as a violation of Section 1692e(2)(A).  Ms. Stokes conveniently cloaks the argument within the fabric of Section 1692e rather than Section1292g, presumably because the latter explicitly limits communications within the thirty day validation period, and the third letter is clearly sent outside of that bound.  Specifically, Section 1692g(b) provides that "[a]ny collection activities and communications *during the 30-day period* may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor." (emphasis added).  Section 1692g(b) is on point here, and Ms. Stokes cannot sidestep its parameter of rights by seeking cover in another section of the Act.

Moreover, even assuming, *arguendo*, that the statement was within the thirty day validation period, and/or enveloped within Section 1692e(2)(A), it must fail because "legitimate" is a synonym for "valid."  Black's Law Dictionary defines "legitimate" as "[t]hat which is lawful, legal, recognized by law, or according to law."  Similarly, "valid" is defined as "[h]aving legal strength or force, executed with proper formalities, incapable of being rightfully overthrown or set aside." 901, 1550 (6th ed. 1990).

Thus, no shade of confusion, contradiction, or overshadowing is cast here because the communication was made outside of the thirty-day period, because the terms at issue are synonymous, and because a reading of the third letter in tandem with the prior two casts even further light on the issue from the perspective of the least sophisticated consumer.

### III. CONCLUSION

In conclusion, TSI's partial motion for judgment on the pleadings of claims founded upon violation of Sections 1692e(2)(a), 1692e(10), and 1692g of the Fair Debt Collection Practices Act is GRANTED.  The Court will enter an order implementing this opinion.


                                                            /s/Dickinson R. Debevoise
                                                            DICKINSON R. DEBEVOISE, U.S.S.D.J.

**Dated:**  February 14, 2013